**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

CURTIS JEFFERY BENFORD,
  *Defendant-Appellant.*

No. 07-50210

D.C. No.
CR-05-00010-DOC-
01

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
June 1, 2009—Pasadena, California

Filed August 3, 2009

Before: Pamela Ann Rymer, Susan P. Graber, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Graber

---

**COUNSEL**

Tarik S. Adlai, Law Offices of Tarik S. Adlai, Pasadena, California, for the defendant-appellant.

Anne C. Gannon, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

---

**OPINION**

GRABER, Circuit Judge:

Defendant Curtis Jeffery Benford appeals his conviction and resulting 147-month sentence for armed robbery. We hold: (1) the absence of defense counsel from a short pretrial conference at which the pre-existing trial date was confirmed and at which nothing else of substance happened did not constitute per se ineffective assistance of counsel in violation of the Sixth Amendment; and (2) the sentencing court's incorporation of a "brandished" finding in the presentence report and

the court's statement at sentencing that the defendant had "turned and pointed the handgun at [the teller]," which was "an absolutely harrowing experience for the victims," sufficed to support application of the seven-year minimum sentence provided for in 18 U.S.C. § 924(c)(1)(A)(ii). We therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

On December 29, 2004, a man robbed a Bank of America branch in East Brea, California. The robber left with substantial amounts of cash—and, unbeknownst to him, with an electronic tracking device. Police detected the tracking device's signal and attempted to stop the motor vehicle carrying the device. The vehicle did not stop, and a high-speed chase ensued. Eventually, police managed to stop the vehicle, and they then apprehended the driver and the passenger, who both had fled on foot. A bank teller identified the passenger, Defendant here, as the robber.

The government jointly indicted Defendant on one count of armed robbery, in violation of 18 U.S.C. § 2113(a), (d) ("count one"), and one count of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) ("count two"), and Michael Jerome King, the driver of the vehicle, of aiding and abetting the armed robbery. At a post-indictment arraignment hearing, the district court scheduled a pretrial status conference for February 28, 2005, and set the trial for March 8, 2005.

On February 28, 2005, the district court conducted the scheduled pretrial status conference. Defendant's counsel was "on his way" but did not arrive in time for the conference. All other interested parties—the government's lawyer, King's lawyer, and both defendants—attended. None of the participants had any issues to resolve. The government's lawyer and King's lawyer stated that the previously scheduled trial date of March 8 remained acceptable. The government's lawyer

did say, however, that he had heard that Defendant's lawyer had discussed with an Assistant United States Attorney the possibility of seeking a different trial date but that he personally didn't "know anything beyond that." In the absence of any further information, the court noted that "the matter will proceed to trial on the date of March 8th when it's presently set." At no time—either before the status conference or after —did Defendant's lawyer request a continuance of the trial date. The trial began, as scheduled, on March 8.

The jury found Defendant guilty of both counts. The court sentenced Defendant to 147 months' imprisonment: 63 months on count one and 84 months on count two, to be served consecutively. Defendant timely appeals his conviction and sentence.

## STANDARDS OF REVIEW

We review de novo whether a defendant received ineffective assistance of trial counsel. *United States v. Benlian*, 63 F.3d 824, 826 & n.3 (9th Cir. 1995). As discussed below, however, we ordinarily do not review ineffective assistance of counsel claims on direct appeal.

We review for plain error claims of procedural error at sentencing raised for the first time on appeal. *United States v. Autery*, 555 F.3d 864, 873 (9th Cir. 2009).

## DISCUSSION

A. *Ineffective Assistance of Counsel*

Defendant argues that we must reverse his conviction because he received ineffective assistance of counsel.[1] In par-

---

[1]Defendant also challenges his conviction on the ground that the jury instructions were erroneous. Because Defendant failed to object at trial, we review for plain error. *United States v. Tirouda*, 394 F.3d 683, 688 (9th Cir. 2005). The jury instructions followed the Ninth Circuit Model Jury Instructions and required the jury to find all the statutory elements of the crime. There was, therefore, no error, plain or otherwise.

ticular, Defendant claims that his counsel was unfamiliar with the physical evidence, failed to request a continuance, failed to interview key percipient witnesses, failed to subpoena adequately another witness, failed to research the jury instructions adequately, failed to object to the jury instructions, failed to conduct sufficient discovery, and failed to consult with Defendant adequately.

"As a general rule," we do not review ineffective assistance of counsel claims on direct appeal. *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005).

> The rationale for our general rule . . . is that ineffectiveness of counsel claims usually cannot be advanced without the development of facts outside the original record. Stated another way, a challenge to effectiveness of counsel by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted.

> We have recognized two extraordinary exceptions to this general rule: We have permitted ineffective assistance claims to be reviewed on direct appeal in the unusual cases (1) where the record on appeal is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel.

*Id.* at 1156 (alterations, internal quotation marks, and citations omitted).

Most of Defendant's arguments fall plainly within the "general rule" and do not constitute an "extraordinary exception" or present an "unusual case." The factual record on direct appeal is insufficient to assess "what counsel did, why it was done, and what, if any, prejudice resulted." *Id.* We

therefore decline to address all of the ineffective assistance of counsel claims except one: that the undisputed absence of Defendant's lawyer from the pretrial status conference was per se ineffective assistance of counsel because the conference was a "critical stage" of the trial. Defendant asserts that we may review this claim on direct appeal because no factual record need be developed; that is, this claim falls within the exception in which "the record on appeal is sufficiently developed to permit determination of the issue." *Id.* For the reasons below, we agree with Defendant that we may review this claim on direct appeal, but we disagree that the pretrial status conference here was a "critical stage."

Two important observations lead us to conclude that we may review this claim on direct appeal. First, the record on appeal is clear—and the government does not dispute—that Defendant's counsel was absent from the pretrial status conference. No further factual development is needed to establish that point. Second, although most ineffective assistance of counsel claims require courts to conduct a prejudice inquiry, *see generally Strickland v. Washington*, 466 U.S. 668 (1984), a complete denial of counsel at a critical stage does not. *See Musladin v. Lamarque*, 555 F.3d 830, 836 (9th Cir. 2009) ("[C]ourts are 'require[d] . . . to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.' " (second alteration in original) (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)). Because prejudice is presumed, no factual development is needed on this point either. We turn, then, to the question whether the pretrial status conference in this case was a "critical stage."

"The Supreme Court has not provided a definitive list of *Cronic* 'critical stages.' " *Id.* at 839. But the Court's cases provide several examples of critical stages. *See Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009) (post-indictment interrogation); *Iowa v. Tovar*, 541 U.S. 77, 81 (2004) (entry of a guilty plea); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (sentencing); *United States v. Wade*, 388 U.S. 218,

236-37 (1967) (post-indictment lineup); *see also Frantz v. Hazey*, 533 F.3d 724, 743 (9th Cir. 2008) (en banc) (consideration of a jury note). Examples of stages that are *not* critical include the taking of a handwriting exemplar, *Gilbert v. California*, 388 U.S. 263, 267 (1967), and a post-indictment photographic lineup, *United States v. Ash*, 413 U.S. 300 (1973). *See also Hovey v. Ayers*, 458 F.3d 892, 902 (9th Cir. 2006) (mid-trial hearing on the competency of defendant's lawyer).

**[1]** "A critical stage is any 'stage of a criminal proceeding where substantial rights of a criminal accused may be affected.' " *Hovey*, 458 F.3d at 901 (quoting *Mempa v. Rhay*, 389 U.S. 128, 134 (1967)).

> [W]e have distilled a three-factor test for determining what constitutes a critical stage. We consider whether: (1) failure to pursue strategies or remedies results in a loss of significant rights, (2) skilled counsel would be useful in helping the accused understand the legal confrontation, and (3) the proceeding tests the merits of the accused's case. The presence of any one of these factors may be sufficient to render a stage of the proceedings "critical."

*Id.* (internal quotation marks and citation omitted).[2]

**[2]** The pretrial status conference in this case implicates

---

[2]In *Musladin*, we did not mention the *Hovey* three-part test but considered, instead, whether the stage more generally had " 'significant consequences for the accused.' " 555 F.3d at 839 (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)). We do not read *Musladin* as a departure from *Hovey* but simply as a more general formulation of the test. Nothing in *Musladin* suggests that it intended to displace the *Hovey* three-part inquiry and, of course, *Musladin* could not overrule *Hovey* because there has been no inconsistent intervening Supreme Court precedent. *See generally Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc). But we note that we would reach the same conclusion under *Musladin*'s more general "significant consequences" test, for the same reasons as stated in text.

none of those "factors." Nothing significant occurred at the pretrial status conference. It is true that, had he attended, Defendant's lawyer could have asked for a continuance during the conference. But, just as easily, he could have moved for a continuance before the conference or after it. Nothing in the record suggests that the district court would not have entertained such a motion, had one been filed, nor that his chances for a continuance were better at the status conference than they were either before or after the conference.

**[3]** Because nothing other than confirming the pre-existing trial date occurred at the conference, there was no "loss of significant rights." *Hovey*, 458 F.3d at 901. There also was no "legal confrontation," so counsel would not have been "useful in helping the accused understand" the proceeding. *Id.* (internal quotation marks omitted). Finally, the hearing plainly did not "test[ ] the merits of the accused's case." *Id.*

**[4]** Unlike the stages found to be critical by the Supreme Court and by us, this particular status conference had nothing to do with the merits of Defendant's case and did not result in the resolution of any issue that could not easily have been altered in the future. We therefore hold that there was no violation of Defendant's Sixth Amendment right to counsel on the narrow question of the claimed complete denial of counsel at a critical stage.[3] We limit our holding to what happened (and what did not happen) in this case; we do not hold that a status conference never can be a critical stage, but only that this one was not. Additionally, because we address here only

---

[3]To the extent that Defendant argues more generally that his counsel should have filed a motion to continue the trial date, that claim is appropriate only for collateral review. *See Jeronimo*, 398 F.3d at 1155. Counsel may have had a strategic reason for not moving for a continuance; for instance, Defendant might have declined to waive his right to a speedy trial, counsel might have thought that the government's case would be less well presented if the trial took place quickly, or the like. In addition to exploring why counsel did not ask for a continuance, a habeas corpus proceeding would examine whether any prejudice resulted. *See id.* at 1156.

Defendant's claim that the absence of his counsel at the status conference constitutes per se ineffective assistance of counsel, he may bring all other claims in a habeas proceeding, the validity of which we do not consider here.

B.  *Sentencing*

**[5]** Defendant argues that the district court's imposition of seven years' imprisonment for count two, the violation of 18 U.S.C. § 924(c), is in error. Section 924(c)(1)(A) states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Defendant argues that, because neither the jury nor the judge made a finding that he "brandished" the firearm, the district court was required to impose a five-year sentence under sub-

section (i), rather than the seven-year sentence under subsection (ii) that the district court actually imposed.

**[6]** Defendant is mistaken to the extent that he argues that the jury had to make the finding that he brandished a firearm. Under settled law, the judge was authorized to make the "brandished" finding as a sentencing enhancement. *See Harris v. United States*, 536 U.S. 545, 551-52 (2002) (holding that, under § 924(c), "brandishing" a firearm is a sentencing factor, not an element of the crime, and that allowing a judge to make that finding did not violate the defendant's constitutional rights).

**[7]** The more difficult question here concerns whether the district court actually made the necessary "brandished" finding. "[T]he term 'brandish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4). The presentence report ("PSR") recommended that the district court apply subsection (ii) of the statute, because Defendant brandished a firearm, and that the district court impose the minimum sentence (which is also the guideline sentence) of seven years. The district court did just that and expressly "adopt[ed]" the relevant sections of the PSR "as the Court's own findings." Additionally, the court found that Defendant "turned and pointed the handgun at [the teller] . . . . This has to be an absolutely harrowing experience for the victims involved." *See also* Jury Instructions (requiring the jury to find that Defendant "intentionally made a display that reasonably caused the bank teller . . . to fear bodily harm by using a dangerous weapon"). Those findings plainly encompass a finding that Defendant brandished a firearm. Importantly, Defendant did not object to the PSR or to the district court's sentence. In conclusion, the district court adequately made the necessary "brandished" finding.

We are mindful of our recent opinion in *United States v. Carter*, 560 F.3d 1107, 1114 (9th Cir. 2009). There, we reviewed a factual finding by the sentencing court that was "ambiguous" because, on appeal, it was unclear whether the district court found that Defendant "brandished" a firearm or simply "used" a firearm (which would warrant only a five-year sentence under subsection (i)). *Id.* In light of the ambiguity, we held:

> Because it is unclear whether the district court found the firearm was brandished, we must vacate the seven-year sentence and remand for re-sentencing on the charge of violation of 18 U.S.C. § 924(c). The trial judge, rather than this court, is in a better position to make the determination whether the firearm was "used" or "brandished." The trial judge must make this determination and state it clearly on the record.

*Id.* Here, however, the district court's finding is unambiguous. The district court adequately found that Defendant brandished the firearm.[4]

**AFFIRMED**.

---

[4]Even if the district court erred by failing to state expressly on the record in so many words that Defendant "brandished" a firearm, we would not reverse the sentence, because the plain-error standard would not be met. The alleged error was not "plain" and did not affect Defendant's substantial rights. The jury findings, the PSR's findings, and the district court's findings clearly encompassed an express finding that Defendant "brandished" a firearm.